**HUDSON RIVERKEEPER FUND, INC., Plaintiff,**

v.

**PUTNAM HOSPITAL CENTER, INC., Defendant.**

No. 95 Civ. 0286 (BDP).

United States District Court, S.D. New York.

June 26, 1995.

---

Timothy Cox, Karl Coplan, Robert Kennedy, Pace Environmental Litigation Clinic, White Plains, NY, for plaintiff.

Michael B. Gerrard, Arnold & Porter, O. Peter Sherwood, Kalkines Arky Zall & Bernstein, New York City, for defendant.

## MEMORANDUM DECISION

PARKER, District Judge.

This action for violations under § 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, is before this court on the defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff Hudson Riverkeeper Fund, Inc. ("Hudson Riverkeeper") is a not-for-profit organization dedicated to preserving the water quality of both the Hudson River and the New York City Watershed. Defendant Putnam Hospital Center, Inc. ("the Hospital") is a not-for-profit corporation that owns and operates a sewage treatment plant which discharges directly into the Croton Falls Reservoir.

On September 19, 1994, Hudson Riverkeeper sent a notice of intent to sue letter ("notice letter") in which it identified the Hospital as an alleged violator of the CWA. The notice letter alleged that the Hospital violated and continued to violate its State Pollutant Discharge Elimination System (SPDES) permit. The notice letter listed the parameters that the Hospital had allegedly violated and the permit limitation for each parameter. Although the notice letter alleged that the violations were continuing, it did not identify the dates on which the alleged violations occurred. The notice letter further indicated Hudson Riverkeeper's intent to file a citizen suit against the Hospital under § 505(a) of the CWA, 33 U.S.C. § 1365(a), for discharging improperly treated sewage into New York City's drinking water supply.

Hudson Riverkeeper filed its complaint on January 17, 1995. The complaint alleges that the Hospital has violated and continues to violate the terms and conditions of its SPDES permit by exceeding its permit limitations for several pollutants including coliform, suspended solids, and pH as well as violating other permit limitations.

■ Defendant moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R. of Civ.Pro., on the grounds that Hudson Riverkeeper's notice letter fails to meet the notice requirements for a citizen suit under section 505(b) of the CWA, 33 U.S.C. § 1365(b).

Under the CWA, a citizen suit may be filed against any person or government entity alleged to be in violation of "an effluent standard or limitation." 33 U.S.C. § 1365(a)(1)(A). Section 505(b) of the CWA, 33 U.S.C. § 1365(b), requires that 60 days prior to the filing of a citizen suit the citizen must give the alleged violator and the relevant state and federal agencies notice of the alleged violations. The United States Environmental Protection Agency's ("EPA") regulation requires that such notice contain:

> sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of such violation, and the full name, ad-

dress, and telephone number of the person giving notice.

40 C.F.R. 135.3(a) (1994).

The Hospital first contends that these regulations require Hudson Riverkeeper to identify specifically the date or dates of any alleged violation of the CWA. The Hospital cites *Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), in support of its argument that "strict compliance" with the procedural requirements for commencing a citizen suit, including the content specifications promulgated in 40 C.F.R. 135.3(a), is a "mandatory condition[] precedent" which a Court may not disregard at its discretion. *Hallstrom*, 493 U.S. at 28, 31, 110 S.Ct. at 309, 311. The Hospital argues that Hudson Riverkeeper's failure to identify the dates of the alleged violations in its notice letter is a deficiency necessitating dismissal under *Hallstrom*.

In the alternative, the Hospital contends that even if the EPA's regulations are interpreted to require that the citizen group supply only enough information to permit the recipient to identify the dates of any alleged violations, Hudson Riverkeeper's notice letter is still inadequate because it contains no information about dates of the alleged violations.

In response, Hudson Riverkeeper also argues that the EPA's regulations require only sufficient information to allow the recipient to identify the dates of the alleged violation. As long as the information provided in the notice letter adequately serves this purpose, the specific dates themselves need not be included.

In support of the adequacy of its notice letter, Hudson Riverkeeper points to the fact that the Hospital is required to submit monthly monitoring reports of its discharge into Croton Falls Reservoir to the New York Department of Environmental Conservation ("NYDEC"). See CWA § 308, 33 U.S.C. § 1318. These reports, known as discharge monitoring reports ("DMRs"), contain the results of the Hospital's testing and monitoring for each limitation in its SPDES permit, including those pollutants listed in Hudson Riverkeeper's notice letter. According to Hudson Riverkeeper, all the Hospital need

do in order to ascertain the specific dates of the alleged violations is review these brief and "easy to scan" DMRs.

■ Hudson Riverkeeper's notice letter fails to satisfy the content requirements specified in 40 C.F.R. § 135.3(a) for several reasons. First, the notice letter does not provide "sufficient information to permit the recipient to identify ... the date or dates" of the alleged violations. Although Hudson Riverkeeper is correct in asserting that, under the literal language of the EPA regulation, the specific dates need not themselves be included in the letter, see *Public Interest Research Group of N.J. v. Hercules, Inc.*, 50 F.3d 1239 (3d Cir.1995); *California Public Interest Research Group v. Shell Oil Co.*, 1994 U.S.Dist. Lexis 18999, (N.D.Cal.1994) (CALPIRG); *York Center Park Dist. v. Krilich*, 1993 WL 114628, 1993 U.S.Dist. Lexis 4675 (N.D.Ill. Apr. 12, 1993); *Highlands Conservancy v. E.R.O., Inc.*, 1991 U.S.Dist. Lexis 20091 (S.D.W.Va. Apr. 18, 1991), at a bare minimum some reasonably specific indication of the time-frame when the alleged violations occurred is necessary. See *CALPIRG*, 1994 U.S.Dist. Lexis at *4. The legislative history indicates that Congress, in delegating to the EPA the task of determining the form of the notice letter, sought to "strike a balance" that would provide notice recipients with sufficient information to identify the basis of the citizen's claim while not placing "an undue burden on the citizen." *Hercules*, 50 F.3d at 1246. Requiring Hudson Riverkeeper to specify at the very least a discrete, specific time-frame is not an undue burden—if Hudson Riverkeeper was able to identify the violations in the first place, then it must necessarily be aware of when the alleged violations took place.

Hudson Riverkeeper's claim that the Hospital could have easily identified the dates of the alleged violations by simply searching through its DMRs is incorrect. The Hospital was given no indication in the notice letter as to whether its search should begin one year ago, five years ago or ten years ago. In addition, Hudson Riverkeeper revealed in a May 11, 1995 letter that the allegations contained in its notice letter were not entirely

based on the Hospital's DMRs. Rather, Hudson Riverkeeper ascertained some of the alleged violations from testing reports put out by the New York City Department of Environmental Protection ("DEP"). The Hospital, therefore, became aware that Hudson Riverkeeper's allegations emanated from these dual sources only eight months after the notice letter was sent.

Second, Hudson Riverkeeper's failure to provide in its notice letter the time or the sources of its allegations frustrates the purposes underlying the CWA and the 60–day notice requirement. As the Court noted in *Hercules,* "[i]n deciding whether the plaintiffs here complied with the content requirements established under the regulation, we must consider whether their notice letter served the purpose that Congress intended...." *Id.* at 1249.

Notice serves a two-fold purpose. First, it allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. *Id.* at 1246. Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987). The content requirements for the notice letter are intended to facilitate these objectives within the 60–day period afforded by the letter. Hudson Riverkeeper's failure to indicate any time-frame during which the alleged violations occurred may have prevented the Hospital from accurately identifying its alleged violations and may have hindered a timely, out-of-court resolution of this conflict.

For the foregoing reasons, defendant's motion to dismiss the complaint is granted.

SO ORDERED.